IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

FILED

2015 NOV 16  PM 3: 29

CLERK US DISTRICT COURT
WESTERN DIS  OF TEXAS
BY_____
DEPUTY

UNITED STATES OF AMERICA,
                                    Plaintiff,

-vs-                                                        Case No.  A-14-CA-523-SS

WILLIAM W. RUTH,
                                    Defendant.

---

# O R D E R

BE IT REMEMBERED on the 25th  day of September 2015, the Court held a hearing in the above-styled cause and the parties appeared either in person or through counsel.[1] Before the Court are Defendant William W. Ruth's Motion for Summary Judgment and to Enforce Settlement [#16], Plaintiff United States of America's Response [#21] thereto, Plaintiff's Motion for Summary Judgment [#19], Defendant's Response [#24] thereto, and Plaintiff's Reply [#29] in support. Having considered the documents, the case as a whole, the testimony at the hearing, and the governing law, the Court now enters the follow opinion and orders.

## Background

This case involves a suit to enforce two promissory notes in default. Beginning in 1990, Defendant William W. Ruth (Ruth) obtained seven student loans totaling $33,000. Def.'s Mot. Summ. J. [#16] Ex. F at 1. Ruth's loans were guaranteed by two entities: the Pennsylvania Higher Education Assistance Agency (PHEAA) and the Texas Guaranteed Student Loan Corporation (TGSLC). *Id.* Ex. G at 1. The Department of Education (the Government) reinsured all of Ruth's

---

[1] Defendant William W. Ruth is an attorney representing himself *pro se* in this matter.



loans pursuant to its loan guaranty program, the Federal Family Education Loan Program. Fact App. [#20] ¶ 3. Under this program, were default to occur, the guaranty agency would pay the lender, then file a claim with the Government to be reimbursed a percentage of its losses. *Id.* ¶ 5.

In this case, the Government seeks to enforce two promissory notes executed by Ruth on August 25, 1992 in favor of Ameritrust Company National Association (the lender) for $4,000 (Note 1) and $7,500 (Note 2). *Id.* ¶¶ 6–9. PHEAA guaranteed these two loans. *Id.* ¶ 6. In 1997, Ruth defaulted on both promissory notes, after which the lender filed a claim on the loan guarantee. Def.'s Mot. Summ. J. [#16] at 1. PHEAA paid $9,363.36 to the lender and was reimbursed by the Government under the reinsurance agreement. Fact App. [#20] ¶ 9. PHEAA was unable to collect the loans, and on May 25, 2005, assigned the loans to the Government. *Id.* [#20-1] Ex. 1 ¶ 17.

Sometime in 1997, Ruth began communicating with Calame, Linebarger, Graham & Pena, LLP (Calame), which was collecting his delinquent debt on behalf of TGSLC. Def.'s Mot. Summ. J. [#16] ¶ 9. Based on the Government's representation at the hearing, TGSLC guaranteed five of Ruth's seven student loans, all of which were in default in 1997. On December 1, 1997, Ruth proposed a settlement of $20,000 to Calame and sent a copy of the letter proposing settlement to the Government. *Id.* ¶ 11. Ruth now insists his letter "made . . . very clear" his intent to settle *all* the student loans associated with his name and social security number, even though he did not identify particular student loans in his letter.[2] *Id.* ¶ 13. Neither Calame nor the Government responded, but TGSLC did. *Id.* Ex. E at 1. It proposed a counteroffer of $26,000 "as payment in full on the above referenced account," which was identified by Ruth's social security number. *Id.* Thereafter, Ruth

---

[2] Notably, Ruth's intention to settle *all* his claims was not as clear as he now argues; his letter to Calame stated, "*this* is one of several loans []. I do desire to resolve *this* matter." Mot. Summ. J. [#16] Ex. D at 1 (emphasis added).

entered into a settlement agreement with TGSLC, and on March 30, 1998, received a letter from Calame stating his account was paid in full. *Id.* Ex. I at 1.

After a private collection agency failed to collect the delinquent debts on the Government's behalf, the Government brought suit against Ruth on June 4, 2014. On June 25, 2015, Ruth moved for summary judgment, arguing the settlement with TGSLC covered all his student loans, including the two loans at issue, because at the time he believed Calame and TGSLC were acting as the Government's agents. On July 9, 2015, the Government submitted a response in opposition to Ruth's motion and filed its own motion for summary judgment that same day. On August 11, 2015, Ruth filed his response, making the Government's summary judgment motion ripe for consideration. The Court held a hearing on the pending motions on September 25, 2015. The Court now turns to the substance of these motions.

## Analysis

### I.     Legal Standard—Summary Judgment

When both parties move for summary judgment, the Court reviews the motions independently of each other, viewing the evidence in the light most favorable to the non-moving party with respect to each motion. *Shaw Constructors v. ICF Kaiser Eng'rs, Inc.,* 395 F.3d 533, 539 (5th Cir. 2004); *Courtland Custom Homes, Inc. v. Mid–Continent Cas. Co.*, 395 F. Supp. 2d 478, 480 (S.D. Tex. 2005). Summary judgment shall be rendered when the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986); *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007). A dispute regarding a material fact is "genuine" if the evidence is such that a

reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Washburn*, 504 F.3d at 508. Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254–55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita*, 475 U.S. at 586. Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *Id.* The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006). Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.* "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact issues that are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. Id. If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential

4

to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322–23.

## II.    Application

In his motion for summary judgment, Ruth makes two alternative arguments: (1) the 1998 settlement agreement settled all of his student loan debt, or (2) if the 1998 settlement agreement did not settle all of his student loan debt, it is PHEAA or the Government's fault for failing to ensure the two loans at issue were included in Ruth's 1998 settlement agreement with TGSLC. In a cross-motion for summary judgment, the Government insists the two loans at issue were not included in the settlement agreement and remain in default. Because the Court finds Ruth has failed to meet his summary judgment burden by establishing TGSLC or Calame, acting as TGSLC's agent, had authority to settle the two loans at issue, this Court GRANTS summary judgment in the Government's favor.

### A.    Sufficiency of Evidence

The Government has produced sufficient evidence to satisfy its summary judgment burden. To recover on a promissory note, "the [G]overnment must show: (1) the defendant signed it, (2) the [G]overnment is the present owner or holder, and (3) the note is in default." *United States v. Lawrence*, 276 F.3d 193, 197 (5th Cir. 2001). In this case, it is undisputed that Ruth signed the two notes at issue. *See* Def.'s Mot. Summ. J. [#16] ¶ 2. Moreover, the evidence in the record shows the Government is the present holder of the notes, because PHEAA assigned the notes to the Government on May 25, 2005. Fact App. [#20-1] Ex. 1 (Reyes Decl.) ¶ 17. Finally, both notes are in default: Note 1 was declared in default on February 11, 1997 and Note 2 was declared in default on March 9, 1997. Reyes Decl. ¶¶ 16, 17.

The burden thus shifts to Ruth to provide specific facts demonstrating there is a genuine issue for trial. *See Lawrence*, 276 F.3d at 197. The crux of Ruth's argument is his mistaken belief that his settlement with TGSLC extinguished all of his student debt..[3] The Court construes Ruth's argument as contending Note 1 and Note 2 are no longer in default because TGSLC had the actual or apparent authority to settle these debts on the Government's behalf. The only evidence Ruth offers in support of his position is a letter from Ruth to Calame seeking to settle his student debt, a letter from TGSLC proposing a counter-offer to settle loans associated with Ruth's social security number, and a letter from TGSLC acknowledging receipt of funds. However, even assuming Ruth's letter clearly indicated his intent to settle "all" his student loans (which the Government disputes), Ruth has failed to demonstrate a fact issue as to whether TGSLC or Calame, acting as TGSLC's agent, had the authority to bind the Government to the 1998 settlement agreement.

i.      **Actual Authority**

To establish an agency relationship, Ruth must show TGSLC or Calame had actual authority, apparent authority, or the Government ratified their actions. *See Folmar v. Terra Renewal, LLC*, No. H–09–3647, 2011 WL 643229, at*4 (S.D. Tex. Feb. 14, 2011) (applying Texas law). Actual authority may be either express or implied and "usually denotes the authority a principal (1) intentionally confers upon an agent, (2) intentionally allows the agent to believe he possesses, or (3) by want of due care allows the agent to believe he possesses." *Id.* Ruth accuses TGSLC and Calame of leading him to believe he was settling all of his student loan debt under his social security

---

[3] Ruth's argument is inconsistent, if not incoherent, at times. While arguing the 1998 settlement agreement with TGSLC discharged all his student debt, Ruth simultaneously concedes the loans at issue were not included in the 1998 settlement. For example, Ruth states, "these loans were not included in the March 30, 1998 settlement" and "the two loans in question could have been included [in the settlement agreement] had PHEAA and Plaintiff taken appropriate action." Def.'s Mot. Summ. J. [#16] ¶¶ 43, 44.

number. *See* Def.'s Mot. Summ. J. [#16] ¶ 23. However, even assuming this is true, Ruth has produced no evidence that either the Government or its predecessor-in-interest, PHEAA, conferred actual authority on TGSLC or Calame to settle the two loans at issue. Indeed, the Government did not even own the loans in question until May 25, 2005, more than seven years after Ruth entered into a settlement agreement with TGSLC. *See* Reyes Decl. ¶¶ 16–17. Moreover, according to the Government, it referred Ruth's delinquent debts to Premiere Credit of North America, LLC, not Calame, for collection on January 19, 2008. *Id.* [#20] ¶ 16. When Premiere Credit was unsuccessful in securing repayment of this debt by November of 2008, the Government referred the debts to the Department of Justice for litigation. *Id.* Accordingly, Ruth has not established the Government or PHEAA intentionally conferred actual authority on either TGSLC or Calame to settle the two loans at issue.

ii.     **Apparent Authority**

Failing actual authority, an agent may bind a principal based on apparent authority.[4] *See Folmar*, 2011 WL 643229, at *4. Apparent authority arises when a principal causes a third party to believe the principal has authorized the agent to act on his behalf. *See id.* at *5. For apparent authority to exist, "the principal must either have affirmatively held the agent out as possessing the authority or the principal must have knowingly and voluntarily permitted the agent to act in an unauthorized manner." *Suarez v. Jordan*, 35 S.W.3d 268, 273 (Tex. App.—Houston [14th Dist.] 2000, no pet.). However, apparent authority is bounded by a third party's responsibility to "ascertain

---

[4] As the Government points out, some courts hold actual authority is necessary to bind the United States government and apparent authority will not suffice. *See, e.g., Dresser Indus., Inc. v. United States*, 596 F.2d 1231, 1236 (5th Cir. 1979) ("[T]he federal government will not be bound by a contract or agreement entered into by one of its agents unless such agent is acting within the limits of his actual authority."); *United States v. Igbonwa*, 120 F.3d 437, 443 (3d Cir. 1997). Nevertheless, in an abundance of caution, the Court considers whether TGSLC or Calame had apparent authority to bind the Government.

both the fact and scope of the agent's authority, and if the [third] party deals with the agent without having made such a determination, she does so at her own risk." *Id.*

In this case, Ruth has produced no evidence establishing an affirmative manifestation from the Government to Ruth indicating TGSLC or Calame had apparent authority to settle on the Government's behalf. Instead, Ruth relies on his own mistaken belief that his settlement negotiations, first with Calame and then with TGSLC, encompassed "all" his student debt. Ruth rationalizes his belief by insisting that all of his student loans arose from the same financing source, were guaranteed by the Government "at all times relevant," and were comprised of SLS and Stafford loans—all of which were in default ten months prior to settlement. *See* Def.'s Mot. Summ. J. [#16] ¶ 31 n.3. However, by failing to ascertain "both the fact and scope" of TGSLC and Calame's authority, Ruth proceeded at his own risk in reaching a settlement agreement. Contrary to Ruth's assertion, it was not the Government's duty to correct Ruth's mistaken belief that TGSLC was settling all of his loans when the Government took no affirmative steps to manifest this mistaken belief in Ruth's mind. To permit Ruth to escape liability for his debts simply because he proceeded without full knowledge of the scope of TGSLC's authority would contradict an established tenet of Texas agency law.

**iii.    Ratification**

"Ratification may occur when a principal, though he had no knowledge originally of the unauthorized act of his agent, retains the benefits of the transaction after acquiring full knowledge." *Folmar*, 2011 WL 643229, at *6. Critical to this determination is the "principal's knowledge of the transactions and his actions in light of such knowledge." *Id.* In the instant case, there is no evidence indicating the Government ratified the 1998 settlement. Indeed, Ruth has not explained how the

Government has retained the benefit of the 1998 settlement or why the Government would have viewed the 1998 settlement as extinguishing debt it did not acquire until 2005.

Indulging every inference in Ruth's favor, his argument that "nowhere . . . in response by TGSLC . . . was [it] stated and/or implied that the settlement did not encompass all of Ruth's student loan debt" falls far short of establishing the necessary agency relationship to bind the Government to the 1998 settlement agreement. *See* Def.'s Resp. [#24] at 4.

### iv.    Alternative Theories

As a last resort, Ruth proffers two novel legal theories in his motion for summary judgment to show his 1998 settlement agreement with TGSLC precludes the Government from seeking repayment of the two loans at issue. First, Ruth argues the Government failed to preserve its right to collect on the two loans at issue because it failed to participate in the 1998 settlement agreement after Ruth sent the Government a copy of his settlement offer. Def.'s Mot. Summ. J. [#16] ¶ 45. However, the Government had no duty to notify Ruth his settlement negotiations with TGSLC did not cover the two loans at issue. The onus of ensuring his settlement encompassed all of his student loan debt fell upon him, and Ruth cannot now claim it was the Government's responsibility to correct his mistaken belief.

Second, Ruth asserts the Government is bound by the 1998 settlement agreement because as guarantor of Ruth's student loans, the Government was a "party" to the settlement negotiations and knowingly failed to participate. Def.'s Mot. Summ. J. [#16] ¶ 46. However, as discussed above, the Government was not a party to the settlement agreement and neither TGSLC nor Calame had the authority to act as the Government's agent in settling the two loans at issue. Accordingly, both novel legal theories proffered by Ruth fail to discharge his liability.

**B.      Counterclaim and Affirmative Defenses**

Ruth counterclaims against the Government for breach of contract. Specifically, Ruth claims the Government, acting through TGSLC, agreed to extinguish all of Ruth's student loan debt in the 1998 settlement agreement and is breaching this agreement by seeking more money seventeen years later. Am. Answer [#10] ¶ 8. Ruth also claims the affirmative defenses of estoppel and accord and satisfaction.[5] Answer [#6] ¶ 6–8.

Because the Court concludes neither TGSLC nor Calame had the authority to enter into a settlement agreement on the Government's behalf, there is no genuine issue of material fact surrounding the existence of a valid settlement agreement between Ruth and the Government. Accordingly, the Court rejects Ruth's counterclaim, as well as his affirmative defenses that (1) the Government is estopped from suing because this matter was previously settled and (2) there was an accord and satisfaction of the two loans at issue. The Court therefore GRANTS summary judgment in the Government's favor.

**C.      Amount Owed**

According to the Government's calculations, Ruth owes a debt in the amount of $29,922.73, which represents the sum of the $15,051.84 principal and the $14,870.89 interest owed as of May 12, 2014. *See* Pl.'s Mot. Summ. J. [#19] at 6. The Government asserts Ruth also owes pre-judgment interest at the rate of $1.31[6] per day from May 13, 2014 until the date of judgment, plus post-

---

[5] While Ruth pled these affirmative defenses in his original answer, he failed to include them in his amended answer. Because his amended answer did not specifically incorporate his earlier answer, the affirmative defenses included in Ruth's original answer are rendered "of no legal effect." *See King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994) ("An amended complaint supersedes the original complaint and renders it of no legal effect unless the amended complaint specifically refers to and adopts or incorporates by reference the earlier pleading."). Nevertheless, the Court addresses Ruth's affirmative defenses in the alternative.

[6] According to the Government, $1.31 represents the sum of the daily interest on Note 1 ($0.50) and Note 2 ($0.81). Pl.'s Mot. Summ. J. [#19] at 6.

judgment interest under 28 U.S.C. § 1961. *Id.* It appears Ruth has not paid anything towards his outstanding balance since his 1998 settlement agreement with TGSLC, and he does not dispute the Government's calculations.

However, the damages claimed in the Government's motion do not match the calculations reported by Deflin M. Reyes, the Government's loan analyst. Notably, Reyes listed the daily rate of interest on Note 2 as $0.80 through June 30, 2015, and "thereafter at such rate as the Department establishes pursuant to section 427A of the Higher Education Act of 1965, as amended, 20 U.S.C. 1077a." Reyes Decl. ¶ 21. Without explanation, the Government claims pre-judgment interest on Note 2 at a daily rate of $0.81 from May 13, 2014 until the date of judgment. Although Ruth does not contest the Government's calculations, the Court directs the Government to submit an affidavit detailing the correct amount of pre-judgment and post-judgement interest owed on both loans within seven (7) days of the date of entry of this order.

### Conclusion

Accordingly,

IT IS ORDERED that Defendant William W. Ruth 's Motion for Summary Judgment and to Enforce Settlement [#16] is DENIED;

IT IS FINALLY ORDERED that Plaintiff United States of America's Motion for Summary Judgment [#19] is GRANTED.

SIGNED this the _16th_ day of November 2015.

_____
SAM SPARKS
UNITED STATES DISTRICT JUDGE